UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.:_____

LIBERTY MUTUAL INSURANCE
COMPANY,

            Plaintiff,

v.

MARIKA TOLZ,

            Defendant.

_____/

## COMPLAINT

      Plaintiff, LIBERTY MUTUAL INSURANCE COMPANY ("Liberty"), through its counsel, hereby sues Defendant, MARIKA TOLZ ("Tolz"), and alleges:

## PARTIES, JURISDICTION, AND VENUE

      1.     This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because Plaintiff and Defendant are citizens of diverse states.

      2.     Liberty is a Massachusetts corporation that is domiciled and operating out of Boston, Massachusetts. Liberty is licensed to conduct business in Florida.

      3.     Tolz is a resident and citizen of Hollywood, Florida in Broward County.

      4.     The causes of action alleged herein fall within the jurisdictional limits of the Court because Liberty seeks to recover more than $75,000.00 from Tolz.

      5.     Venue is appropriate in this Court because Tolz resides within the boundaries of the Southern District of Florida, and because Tolz resides in one of the counties within the jurisdiction of the Fort Lauderdale Division of this Court.

## GENERAL ALLEGATIONS

6.      As part of its business, Liberty issues bonds for selected bankruptcy trustees.

7.      Before the events giving rise to this Complaint occurred, Tolz served as a bankruptcy trustee in the Southern District of Florida and as a receiver in other cases. From time to time, Tolz required bonds naming her as principal with respect to her duties as trustee or receiver.

8.      Accordingly, Tolz (or someone on her behalf) requested bonds from Liberty to secure her duties as trustee or receiver.

9.      For example, on or about July 31, 2001, Tolz executed a Bankruptcy Trustee Bond Application (the "Application") in connection with her request for bonding to secure her duties as a panel trustee for Southern District bankruptcy cases assigned to her.

10.     The Application contained an indemnity agreement ("Agreement") in favor of Liberty.

11.     Tolz's indemnification of Liberty from all losses, costs, and expenses resulting from claims asserted or threatened against bonds was an absolute condition precedent and prerequisite to Liberty issuing any bonds naming Tolz as a principal or trustee.

12.     Moreover, in the Agreement, Tolz agreed, among other things:

> To exonerate and indemnify [Liberty] from and against all claims, losses, liability, damages of any type (including punitive), costs, fees, expenses, suits, orders, judgments, or adjudications whatsoever which surety may incur in connection with Bond, any investigation on account of Bond, the defense or prosecution of any proceeding brought in connection with Bond or with any judicial proceeding referred to in this Application, enforcement of the agreements contained herein, and/or procurement of release from or cancellation of Bond ....

13.    The Agreement is unequivocal and specific in setting forth Tolz's obligations to indemnify and keep Liberty indemnified from all claims, losses, liability, and damages of any kind as a result of executing bonds, or because of Tolz's failure to comply with the Agreement.

14.    In all instances, Liberty agreed to issue various bonds naming Tolz as principal in consideration for Tolz's indemnification Liberty from any losses, costs or expenses that resulted from issuance of such bonds.

15.    Liberty issued multiple bankruptcy trustee bonds and receiver naming Tolz as principal / trustee (the "Bonds").

16.    The Bonds include a Blanket Bond effective on or about January 1, 2003, to which a schedule is attached listing Tolz and several others as panel trustees for Chapter 7 cases.

17.    Tolz was required by law to have the Bonds to secure her performance as a receiver and as a trustee for various bankruptcy estates in the Southern District of Florida (the "Estates").

18.    Tolz has resigned as trustee or receiver of the Estates.

19.    Liberty has received, and believes it will continue to receive, claims against the Bonds from various entities, including, but not limited to: (a) successor trustees and receivers to certain of the Estates, (b) creditors of the respective Estates; and (c) the United States Trustee for the Southern District of Florida.  The individuals or entities referenced in sub-paragraphs (a) – (c) are collectively referred to herein as "Claimants."

20.    The Claimants assert that Tolz breached her duties as trustee or receiver by, among other things, wrongfully dissipating the Estates' assets, and/or misappropriating the Estates' assets.

21.    As a result of Tolz's, alleged failure or refusal to properly perform her duties with respect to the Estates, various Claimants have filed suit against Liberty seeking recovery from the Bonds (the "Tolz Lawsuits").   Other Claimants have threatened to file lawsuits against Liberty under the Bonds.

22.    To date, Liberty is aware of at least the following Claimants' claims and Tolz Lawsuits:

      a.    *In re: Fuzion Technologies Group,* Case No. 01-28967-JKO (Southern District of Florida Bankruptcy proceeding), which proceeding includes:

         i.    an Adversary Complaint filed by Linda A. Conahan, as Curator for the Estate of James M. Christenson; and

        ii.    an Adversary Complaint filed by Seth Heller as Receiver for Douglas Centre-RB-GEM, LLC;

      b.    *Douglas Centre RB-GEM, LLC v. Ocean Bank*, Case No. 08-37393 (Circuit Court, Miami-Dade County);

      c.    *Ocean Bank V. Monticello 856, LLC, et al*, Case No. 08-38183 (Circuit Court, Miami-Dade County);

      d.    *In re: James P. Driscoll,* Case No. 06-12420-BKC-JKO (Southern District of Florida Bankruptcy proceeding);

      e.    *In re: SFD@Hollywood, LLC*, Case No. 08-25185-BKC-RBR (Southern District of Florida Bankruptcy proceeding);

      f.    *In re: Kivi South, LLC,* Case No. 04-26245-BKC-RBR (Southern District of Florida Bankruptcy proceeding); and

4

g.  *In re: Richard Joseph Ryan and Amy Lori Ryan,* Case No. 05-22285-JKO
(Southern District of Florida Bankruptcy proceeding).

23.    Liberty may receive additional claims from currently unknown claimants and may
be named a defendant in additional Tolz Lawsuits.

24.    When Tolz refused or was unable to resolve the Claimants' claims or the Tolz
Lawsuits, Liberty was forced to hire the undersigned attorneys to respond to, investigate, defend
against, and/or resolve the various claims.

25.    In addition, Liberty has paid, and continues to incur, attorneys' fees and costs to
investigate, defend against, and/or satisfy the Claimants' claims and Tolz Lawsuits.

26.    Liberty has demanded that Tolz indemnify it from the Claimants' claims and Tolz
Lawsuits (the "Indemnity Demands").

27.    Despite the Indemnity Demands, Tolz has failed and refused to reimburse Liberty
for the losses and damages Liberty has suffered as a result of issuing the Bonds.

28.    Liberty has also demanded that Tolz deposit unencumbered collateral with
Liberty to protect Liberty from incurring loss or damage with respect to the Claimants' claims or
Tolz Lawsuits (the "Collateral Demand").

29.    Despite the Collateral Demand, Tolz has failed and refused to post collateral
security with Liberty.

30.    Liberty is obligated to pay the undersigned attorneys a reasonable fee for their
services rendered.

31.    All conditions precedent to maintaining this action have occurred, been excused,
or otherwise been waived.

## COUNT I
### (Specific Performance)

32.     Liberty realleges and incorporates paragraphs 1 through 31 above, as though fully set forth herein.

33.     Tolz has failed and refused to reimburse certain Estates for assets she allegedly misappropriated, has allegedly failed to fully and completely account for all of the Estates' assets, and has allegedly otherwise failed to properly administer the Estates according to law.

34.     As a result, Liberty has been asked to fulfill Tolz' obligations to certain of the Estates pursuant to its obligations under the Bonds.

35.     Liberty has suffered, and will continue to suffer, various kinds and natures of liability, loss, and expense as a result of having executed the Bonds due to Tolz' failure to honor her obligations under the Agreement, and because of Liberty's efforts to enforce the Agreement's covenants and conditions.

36.     In addition to the liability, loss, and expense Liberty has suffered and continues to suffer, Liberty may be responsible and liable for additional losses and expenses as a result of the remaining Tolz Lawsuits, Claimants' claims, and other unknown claimants.

37.     In the Agreement, Tolz agreed to:

> … place [Liberty] in funds immediately upon demand, the amount [Liberty] deems necessary to protect itself from any liability, loss or expense, whether or not [Liberty] has made payment or posted a reserve, [Liberty] having the right to use all or part of these funds in payment or settlement of any liability, loss or expense for which [Tolz] is obligated hereunder.

38.     Before filing this action, Liberty demanded orally and in writing, via the Collateral Demand, that Tolz post collateral security to protect Liberty from losses in accordance with the Agreement.

6

39.     Despite Liberty's Collateral Demand, Tolz has failed and/or refused to perform her obligations to collateralize Liberty.

40.     If the requested relief is not granted, Tolz may sell, transfer, dispose, lien, secure, or otherwise divert assets, thereby preventing Liberty's access to these assets for discharging Tolz' obligations to the Estates and her additional obligations to exonerate and indemnify Liberty.  Such actions would irreparably harm Liberty.

41.     Based on demands received from the Claimants to date, Liberty's current monetary exposure far exceeds $3,000,000.00, which amount does not include Liberty's potential liability for attorneys' fees, interest, and costs.

42.     Liberty has no adequate remedy at law to enforce its rights and it will be irreparably harmed if Tolz is not required to honor her indemnity obligations and post collateral with Liberty.

43.     The Agreement is just and reasonable and supported by adequate consideration.

44.     The terms of the Agreement are sufficiently clear, definite, and certain to allow enforcement by this Court.

45.     The performance Liberty seeks is substantially identical to that promised in the Agreement.

46.     In addition, Tolz agreed to make her books and records available for inspection. Specifically, Tolz agreed in the Agreement that she

> … authorizes [Liberty] to investigate statements made in this Application and to check credit with creditors and/or lending institutions, and further authorizes any present or former employer, or any other person, firm or corporation, to furnish information concerning [Tolz] in connection with [Liberty's] underwriting of Bond and [Tolz'] compliance with Bond and with obligations hereunder …

7

***

… if Bond relates to <u>assets of any estate</u>, [Tolz] will provide full
and free access to all records concerning the estate ….

(Original emphasis supplied).

47.     Tolz has failed to provide complete access to her books and records as agreed upon in the Agreement.

WHEREFORE, Liberty requests that this Court enter a decree and immediate order of specific performance:

a.   preventing Tolz from diverting or disbursing any funds without Liberty's express and written approval;

b.   compelling Tolz to post a bond or suitable collateral to secure Liberty against any alleged liability, losses, or expenses;

c.   attaching or freezing Tolz' assets until Tolz posts cash, an appropriate bond, or other unencumbered collateral to adequately protect Liberty;

d.   requiring Tolz to provide Liberty with a full and complete accounting of all assets she owns or in which she has any interest;

e.   permanently enjoining and restraining Tolz from selling, transferring, disposing of, or liening any assets or property, and further enjoining and restraining Tolz from allowing any assets or property to be liened, unless and until Liberty shall be placed in funds;

f.   granting a lien upon all assets and property, including realty, personalty and mixed, in which Tolz has any interest.  Liberty further requests that such lien(s) shall secure Liberty against any loss it may sustain or incur by virtue of

8

issuing the Bonds, and that such lien(s) remain in effect unless and until Liberty is placed in funds as requested hereinabove;

g.  requiring Tolz to allow Liberty full and complete access to all financial books, records, and accounts she maintains;

h.  requiring Tolz to pay all attorneys' fees, costs, and expenses that Liberty has incurred;

i.  requiring Tolz to honor all further agreements and obligations contained in the Agreement; and

j.  granting such further relief as this Court deems just and proper.

## COUNT II
### (Quia Timet)

48.     Liberty realleges and incorporates the allegations in paragraphs 1 through 8, 11 and 14 through 31, as if fully set forth herein.

49.     As a result of issuing the Bonds, Liberty has already been called upon, and reasonably fears that it will be called upon in the future, to pay Tolz's debts and/or perform her obligations with respect to the Estates.

50.     Tolz is obligated to indemnify, and keep Liberty indemnified, from any liability, losses or expenses Liberty incurs or may incur as a result of issuing the Bonds.

51.     Tolz has failed to meet her obligations by, among other things, failing or refusing to satisfy or resolve the Claimants' claims, failing and/or refusing to indemnify Liberty from the Claimants' claims and Tolz Lawsuits, and failing to collateralize Liberty from loss.

52.     Tolz has failed and/or refused, and continues to refuse, to perform her various obligations to the Estates and to Liberty.  As a result, Liberty reasonably fears that it will suffer

further damages as a result of Tolz's alleged defaults with respect to her management of the Estates, her failure to satisfy the Claimants' claims, her failure to resolve the Tolz Lawsuits, and her failure to honor her obligations to Liberty.

53.     Unless the Court immediately grants the requested relief, Liberty will not be adequately secured and/or collateralized for potential obligations under the Bonds before making any necessary and appropriate payments.  In addition, Liberty will be forced to incur additional attorneys' fees, consultants' fees, and costs to investigate, defend against, and resolve the Claimants' claims and Tolz Lawsuits – costs which Tolz is required to pay or for which she is required to fully collateralize Liberty from incurring.

54.     Liberty is without a plain, speedy, or adequate remedy at law, and will be irreparably and permanently injured if this Court does not grant the relief sought below.

55.     Liberty's current monetary exposure as a result of the Claimant's claims and Tolz Lawsuits exceeds $3,000,000.00, which amount does not include Liberty's potential liability for attorneys' fees, interest, or costs.

56.     Further, if the Court does not grant the requested relief, Tolz may sell, transfer, dispose, lien, secure, or otherwise divert assets, thereby preventing Liberty's access to these assets for discharging Tolz' obligations to the Estates and/or to exonerate and indemnify Liberty against further loss.  Such actions would irreparably harm Liberty.

57.     Liberty's fear of further loss is reasonable based on the allegations in this Complaint, and because:

      a.   Liberty has already suffered damages by satisfying certain Claimants' claims and/or Tolz Lawsuits that Tolz failed and/or refused to satisfy;

      b.   Tolz has not favorably responded to Liberty's requests for collateral;

10

c. Tolz has not meaningfully responded to Liberty's requests for information about potential defenses to the Claimants' claims and Tolz Lawsuits;

d. Liberty currently faces liability as a result of multiple Claimants' claims and the Tolz Lawsuits;

e. Tolz resigned as trustee from the Estates following the allegations of her impropriety as trustee;

f. the FBI is conducting an investigation into Tolz administration of the Estates, including an attempt to track a $1,000,000.00 donation to the Holy Cross Hospital that came from an account Tolz managed related to the Scott Rothstein Ponzi scheme matter; and

g. Liberty faces total liability in excess of $3 million.

58.     Liberty is entitled to an award of its attorneys' fees and costs in pursuing this claim according to Florida law.

WHEREFORE, Liberty requests that this Court enter an Order:

a. preventing Tolz from diverting or disbursing any funds without Liberty's express and written approval;

b. compelling Tolz to post a bond or suitable collateral to secure Liberty against any alleged liability, losses, or expenses;

c. attaching or freezing Tolz's assets until Tolz posts cash, an appropriate bond, or other unencumbered collateral to adequately protect Liberty;

d. requiring Tolz to provide to Liberty a full and complete accounting of all assets she owns or in which she has any interest;

11

 e. permanently enjoining and restraining Tolz from selling, transferring, disposing of, or liening any assets or property, and further enjoining and restraining Tolz from allowing any assets or property to be liened, unless and until Liberty shall be placed in funds;

 f. granting a lien upon all assets and property, including realty, personalty and mixed, in which Tolz has any interest.  Liberty further requests that such lien(s) shall secure Liberty against any loss it may sustain or incur by virtue of its having executed the Bonds and that such lien(s) remain in effect unless and until Liberty is placed in funds as requested hereinabove;

 g. requiring Tolz to allow Liberty full and complete access to all financial books, records, and accounts she maintains; and

 h. granting such further relief as this Court deems just and proper.

## COUNT III
### (Breach of Contract / Contractual Indemnity)

59. Liberty realleges and incorporates the allegations in paragraphs 1 through 8, 11 and 14 through 31 as if fully set forth herein.

60. Tolz has committed various breaches and defaults of the Agreement, including:

 a. failing and refusing to pay or otherwise resolve the Claimants' claims and Tolz Lawsuits;

 b. failing and refusing to reimburse Liberty, despite the Indemnity Demands, for the losses and expenses that Liberty incurred as a result of issuing the Bonds;

 c. failing and refusing to post collateral with Liberty despite the Collateral Demand; and

    d.   failing to deliver to Liberty satisfactory evidence of the release of all liability under the Bonds.

61.    As a result of Tolz's breaches of the Agreement, Liberty has suffered damages, including but not limited to the following damages, which continue to accrue, and thus Liberty's damages are continuing in nature:

    a.   the payments Liberty made to satisfy the Claimants' claims and/or Tolz Lawsuits; and

    b.   the attorneys' fees, consultants' fees, and other costs and expenses that Liberty has incurred as a result of issuing the Bonds.

62.    Liberty is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the Agreement.

WHEREFORE, Liberty demands judgment against Tolz for damages, costs of this action, prejudgment interest, attorneys' fees and such further relief as this Court deems proper.

## COUNT IV
### (Common Law Indemnity)

63.    Liberty realleges and incorporates paragraphs 1 through 8, 11 and 14 through 31, as if fully set forth herein.

64.    Liberty is without fault for the damages sought by the Claimants and/or in the Tolz Lawsuits.

65.    Liberty had a special relationship with Tolz by virtue of acting as surety and issuing the Bonds.

66.    Liberty's liability under the Bonds, if any, is merely technical, secondary, and vicarious to that of Tolz, who is actively and completely at fault for, and obligated to timely pay,

any underlying liability on the Bonds, including, without limitation, any liability to the Claimants.

67. As a result of Tolz's failure to honor her obligations to certain Estates, Liberty has incurred and continues to incur damages, losses, and expenses, including attorneys' fees and costs, by reason of having executed the Bonds.

68. Tolz is liable to Liberty for all damages, including all losses, expenses, and attorneys' fees, which Liberty sustained as a result of issuing the Bonds.

69. Liberty's damages, which continue to accrue, include but are not limited to:

   a. the payments made to satisfy the Claimants' claims and/or Tolz Lawsuits; and

   b. the attorneys' fees, consultants' fees, and other costs and expenses that Liberty has incurred as a result of issuing the Bonds.

70. Liberty is entitled to receive its reasonably incurred attorneys' fees pursuant to applicable Florida law.

WHEREFORE, Liberty requests that this Court enter judgment against Tolz for damages, attorneys' fees, prejudgment interest, costs, and such further relief as this Court deems proper.

## COUNT V
### (Equitable Subrogation)

71. Liberty realleges and incorporates the allegations in paragraphs 1 through 8,11 and 14 through 31, as if fully set forth herein.

72. Liberty was forced to pay the Claimants after Tolz failed and/or refused to reimburse certain Estates for the assets she allegedly wrongfully dissipated or misappropriated.

73. Tolz was and is primarily liable to the Claimants based on her role as trustee of the various Estates and according to the Bonds.

14

74.     Liberty's liability to the Claimants was merely technical, secondary, and vicarious to that of Tolz, who was actively and completely at fault for any underlying liability to the Claimants.

75.     Tolz, as principal on the various Bonds, was required to pay or resolve the Claimants' claims and Tolz Lawsuits.

76.     Liberty, having paid to settle certain Claimants' claims and Tolz Lawsuits, is equitably subrogated to the Claimants' rights against Tolz.

77.     Liberty's payments to the Claimants, and any future payments to Claimants, were a result of its obligations under the Bonds and to protect its own interests, not as a volunteer.

78.     Neither Tolz nor any other third-parties' rights will be harmed by Liberty's subrogation to the Claimants' rights.

79.     Liberty's damages include, but are not limited to, all sums Liberty has paid, or will pay, to resolve the Claimants' claims and Tolz Lawsuits, and Liberty's costs, consultant's fees and attorneys' fees incurred to pursue this action.  Liberty's damages are continuing in nature because there are Claimants' claims and Tolz Lawsuits still pending.

WHEREFORE, Liberty demands judgment against Tolz for damages, court costs, prejudgment interest, attorneys' fees, and such other relief as this Court deems proper.

## **COUNT VI**
**(Exoneration)**

80.     Liberty realleges and incorporates the allegations in paragraphs 1 through 8, 11, and 14 through 31, as if fully set forth herein.

81.     Tolz has allegedly been unable and/or unwilling to satisfy her obligations with respect to the Estates to which the Bonds relate by, in part, failing to account for or turnover to various Estates all of the Estates' assets.

82.     Liberty is not attempting to avoid its secondary liability to any of the Claimants under the Bonds, to the extent the Claimants or potential Claimants demonstrate that they are owed such monies.

83.     Instead, Liberty demands that Tolz be compelled to fulfill her obligations to the Claimants and to Liberty by satisfying the Claimants' claims and defending and indemnifying Liberty in the Tolz Lawsuits.

84.     Under the doctrine of exoneration, Liberty is entitled to have Tolz exonerate it from the Claimants' claims and Tolz Lawsuits that are due and owing.

85.     Alternatively, Liberty is entitled to have Tolz place Liberty in funds to satisfy the Claimants' claims and Tolz Lawsuits that have been paid or have matured, and is, therefore, entitled to an Order from this Court requiring Indemnitors to place funds or other security with Liberty, and for such further amounts as appropriate.

WHEREFORE, Liberty requests that this Court enter an Order compelling Tolz to exonerate Liberty by fulfilling its primary obligations to the Claimants and to place Liberty in funds sufficient to reimburse it for the losses Liberty has already suffered.


*s/ Brett D. Divers*
BRETT D. DIVERS, ESQ.
Florida Bar No. 0973246
bdivers@mpdlegal.com
ALBERTA L. ADAMS, ESQ.
F;orida Bar No. 0080063
aadams@mpdlegal.com

BRANDON J. HELD, ESQ.
Florida Bar No. 0044132
bheld@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa St., Ste.2010
Tampa, FL  33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
*Attorneys for Plaintiff*

17